Frank MORRELL, Plaintiff and Respondent,

v.

Walter R. HJELLE, as Highway Commission-
er of the State of North Dakota,
Defendant and Appellant.

No. 8163.

Supreme Court of North Dakota.

May 28, 1964.

Frederick E. Saefke, Jr., Bismarck, for
plaintiff and respondent.

Helgi Johanneson, Atty. Gen., and Myron E. Bothun, Sp. Asst. Atty. Gen., Bismarck, for defendant and appellant.

STRUTZ, Judge.

Between January 8, 1955, and September 19, 1963, the respondent, Frank Morrell, was convicted of seven traffic violations governing the movement of vehicles upon the public highways. The first of such convictions was for reckless driving. Another was for failure to have his vehicle under control, while the remaining five were for speeding. Following his conviction for speeding on September 19, 1963, he was served with an order suspending his driver's license. This order informed him that it appeared "that you have been convicted of offenses against traffic regulations governing the movement of vehicles with such frequency as to indicate a disrespect for traffic laws and a disregard for the safety of other persons on the highways."

Following receipt of the order of suspension, the respondent petitioned the district court for a hearing, as provided by Section 39–06–39 of the North Dakota Century Code. This section grants to any person whose driver's license has been suspended the right to file, within thirty days, a petition for a hearing of the matter in the district court.

The matter came on for hearing before the Honorable Clifford Jansonius, one of the judges of the district court of the Fourth Judicial District, on the 23d day of October 1963. At such hearing, the respondent testified that he is a salesman and that he travels approximately 50,000 miles every year on the highways in the performance of his duties. He further testified that he travels an additional 20,000 miles a year in his private automobile. He then testified as to the nature of each of the offenses of which he had been convicted, none of which, according to the respondent, was attended with any danger. The Director of Safety Responsibility for the North Dakota Highway Department, as agent for the State Highway Commissioner, also testified. The State produced no evidence as to the nature or seriousness of the various violations with which the respondent had been charged, and no attempt was made to substantiate the suspension of the respondent's license by showing the nature of the offenses except to show that the respondent had been convicted of seven offenses governing the movement of vehicles upon the highways.

The trial court found that, since speeding was not included by the Legislature as a ground for mandatory revocation of driver's licenses, speeding is not a "serious offense" within the meaning of the statute. Therefore, the trial court concluded, the frequency of speeding offenses did not give to the Commissioner the right to suspend the respondent's driver's license under the provisions of Section 39–06–32, North Dakota Century Code, authorizing the suspension upon a showing by his records or other sufficient evidence that the licensee "[h]as been convicted of serious offenses against traffic regulations governing the movement of vehicles with such frequency as to indicate a disrespect for traffic laws and a disregard for the safety of other persons on the highways".

The Highway Commissioner has appealed to this court from the judgment entered revoking the order of suspension of the respondent's driver's license.

In attempting to sustain the order of suspension of the respondent's driver's license, the Commissioner argues that all offenses against traffic regulations governing the movement of vehicles upon the public highways are serious; that speeding is a particularly serious offense, as is evidenced by the fact that it is one of the chief causes of traffic accidents in the State of North Dakota; and that all that is required for the suspension of a driver's license is the Commissioner's showing, by the Highway Department records, that the licensee has been convicted of offenses against traffic regulations affecting the movement of vehicles upon the highways "with such frequency as to indicate a disrespect for traffic laws

and a disregard for the safety of other persons on the highways."

■ This contention clearly cannot be sustained. If the Legislature had intended to make conviction for violation of every type of traffic regulation governing movement of vehicles on the highways a ground for suspending the operator's driver's license, it would not have provided that the convictions on which such suspensions are based should be for "serious offenses." When the statute fails to define the word "serious," such word will be given its usual and ordinary meaning. Webster defines "serious" as "attended with danger"; also "grave," as opposed to "trifling, unimportant." "Serious" has been defined by other courts as meaning "[n]ot trifling; grave; giving rise to apprehension; attended with danger." Lamb v. Mozingo, 198 Va. 432, 94 S.E.2d 457.

While we cannot agree with the contention of the Highway Commissioner that all traffic offenses involving the movement of vehicles on the public highways are serious, neither can we agree with the conclusion of the trial court that, since speeding was not included by the Legislature as one of the grounds for mandatory revocation of a driver's license, speeding cannot be considered as a "serious offense" within the meaning of that statute.

■ We believe the Legislature intended that, in determining what constitutes a "serious offense," the nature of the particular violation, rather than the name of the violation, should be considered. The fact that the Commissioner is given discretion in the matter presupposes that there are differences in convictions of traffic violations of regulations governing the movement of vehicles on the public highways. Exceeding the speed limit by ten miles an hour in driving on a crowded city street might be a very serious offense, while exceeding the speed limit by ten miles an hour on a straight stretch of highway in the country, with no other traffic on the highway, would not be considered serious.

Therefore, what is and what is not a "serious offense" would depend entirely on the circumstances of each case. As was said by the Washington Supreme Court in State ex rel. Ralston v. State Department of Licenses, 60 Wash.2d 535, 374 P.2d 571,

"Peripheral hypothetical situations, or marginal offenses, do not render statute ineffective with respect to that which plainly falls within its terms."

Had the convictions of the respondent been shown to have involved serious offenses, we believe the Commissioner would have been justified in suspending the respondent's driving privileges, even though all of such convictions might have been for the offense of speeding. However, the Commissioner in this case based his order of suspension on the mere fact of the convictions, and not on the fact that those convictions were for serious offenses or that any one of them was, in fact, for a serious offense. The record is silent as to the nature of the offenses except for the testimony of the respondent, and such testimony indicates that the offenses were not serious.

■ Since the Commissioner relied entirely upon the fact of convictions of a series of offenses rather than on the nature of those offenses, there is no showing in this case that the offenses were serious. The Commissioner's discretion is limited by the statute, and his authority to suspend licenses must be based on convictions of the operators of serious offenses against traffic regulations governing the movement of vehicles on the highways. Therefore, there being no showing that the offenses of which the respondent was convicted were "serious offenses," the order of the Highway Commissioner suspending the respondent's driver's license was not justified.

The judgment of the district court is affirmed.

MORRIS, C. J., and TEIGEN, BURKE and ERICKSTAD, JJ., concur.