William F. SUEPPEL, Commissioner of Public Safety of the State of Iowa, and the Department of Public Safety, Appellants,

v.

The Honorable William R. EADS, Judge of the District Court of Iowa, in and for Linn County, Appellee.

No. 52777.

Supreme Court of Iowa.

Feb. 6, 1968.

Richard C. Turner, Atty. Gen., and Joseph W. Zeller, Asst. Atty. Gen., for appellants.

Robert C. Nelson, Cedar Rapids, for appellee.

RAWLINGS, Justice.

Original certiorari to review judgment of defendant court setting aside and vacating orders by state department of public safety suspending three separate licenses to operate a motor vehicle.

The cases here involved, consolidated for purpose of hearing on appeal, are in like manner presented for review.

Plaintiff commissioner, finding Thomas Ray Cowell, Leroy Charles Mann and Myrle Joseph Dietzenbach, hereafter sometimes referred to as offenders, to be "habitual violators" caused orders to issue suspending operator's license of each for a period of 30 days.

None of these offenders requested hearing before the commissioner or his agent. (Code section 321.211) But each appealed to the trial court. (Code section 321.215) Plaintiffs answered and resisted.

Prior to hearing on appeal counsel for offenders attempted presentation of a stipulation to which there was in large part no agreement. None of them testified or presented any evidence on their behalf.

To all intents and purposes each case was presented and appears to have been determined on the basis of a transcript of proceedings before the commissioner. (Code section 321.215)

The record discloses, without dispute, the following convictions for violation of motor vehicle traffic laws by each offender prior to issuance of license suspension orders here in question.

THOMAS RAY COWELL: June 30, 1963, speeding; October 18, 1964, speeding; May 21, 1965, disobeying traffic signal; June 17, 1965, night speeding. (License suspension notice issued June 30, 1965.)

LEROY CHARLES MANN: July, 1963, speeding; March 12, 1965, speeding; April 29, 1965, failure to stop for stop sign; October 9, 1965, disobeying traffic signal. (License suspension notice issued November 19, 1965.)

Myrle Joseph Dietzenbach: November 14, 1964, speeding; July 27, 1965, speeding; October 5, 1965, speeding. (License suspension notice issued November 23, 1965.)

In setting aside and vacating the challenged suspension orders trial court, finding the term "habitual violator" not defined and too indefinite, concluded the administrative proceedings were illegal. We do not agree.

■ I. Certiorari is appropriate where an inferior tribunal is alleged to have exceeded its proper jurisdiction or otherwise acted illegally. Rule 306, R.C.P., and Butler v. Pension Board of Police Dept., 259 Iowa 1028, 147 N.W.2d 27, 30.

■ And where, as in the case at hand, material facts are undisputed, it is for us to review and determine the finding as a matter of law. Bump v. District Court, 232 Iowa 623, 630, 5 N.W.2d 914. See also Powers v. McCullough, 258 Iowa 738, 741, 140 N.W.2d 378.

■ In that same vein, if there is no substantial evidence to support findings upon which a lower tribunal arrives at a challenged conclusion of law, it acts illegally. City of Sioux City v. Civil Service Commission, 247 Iowa 1254, 1258, 78 N.W.2d 833.

■ Although Code section 321.215 says in part, a decision of the court on appeal shall be final, certiorari still lies to review it. As we said in Hohl v. Board of Ed., 250 Iowa 502, 508–509, 94 N.W.2d 787: "Certiorari is the method of bringing the record of an inferior tribunal before the court for the purpose of ascertaining wheth-

er the inferior tribunal or body had jurisdiction and whether its proceedings were authorized. See 19 Iowa Law Review 467. Clearly it comes within the supervisory functions of the appellate courts and is necessary to keep all such bodies within their proper functions and to prevent them from acting in an illegal manner. It is an extraordinary remedy, and the courts may make it *available to all persons* who may show a substantial interest in the matter challenged. (Authorities cited)."

II. The basic question presented, common to all three cases, is whether trial court exceeded its jurisdiction or otherwise acted illegally.

■ On that issue plaintiffs have the burden of proof. Richard v. Holliday, Iowa, 153 N.W.2d 473, 476, and Newby v. District Court, 259 Iowa 1330, 147 N.W.2d 886, 890.

■ III. Although plaintiffs assert four errors relied upon for reversal, they may be consolidated for brevity into one broad assignment: Trial court erred in holding the term "habitual violator", without statutory standards or departmental definition, too vague and uncertain to stand as a lawful basis for suspension of an operator's license by an administrative officer.

In Richard v. Holliday, supra, this court was confronted with substantially the same problem as here posed with reference to license suspension because of a "serious violation" of motor vehicle laws. We there held the quoted term sufficiently certain to permit exercise of administrative sanction by the public safety commissioner. See also Danner v. Hass, 257 Iowa 654, 661–664, 134 N.W.2d 534.

The same question here involved was recently presented in Anderson v. Commissioner of Highways, 267 Minn. 308, 126 N.W.2d 778, 9 A.L.R.3d 746. Resolving the matter contrary to conclusion reached by trial court in the cases at bar, the Minnesota court reasoned, loc. cit., 126 N.W.2d 781–784:

"With respect to the standard expressed by the words 'habitual violator,' it may be said that there is a division among the courts of the various states as to the validity of traffic and license laws using that term. In Harvell v. Scheidt, 249 N.C. 699, 706, 107 S.E.2d 549, 554, the Supreme Court of North Carolina considered a statute identical to ours so far as the relevant subclause is concerned. The court held that such a statute 'does not contain any fixed standard or guide to which the Department must conform in order to determine whether or not a driver is a habitual violator of the traffic laws.' The Supreme Court of South Carolina, * * * also held, with reasoning and authority similar to that of the North Carolina Court, that the term 'habitual' is an inadequate standard. South Carolina State Highway Department v. Harbin, 226 S.C. 585, 86 S.E.2d 446. It may also be noted that the legislatures of other states have, by statute, enacted a more specific rule. The states of Texas, Missouri, and Florida have by legislative specification defined a habitual violator by the number of his offenses, and the legislatures of North and South Carolina, following the decisions above referred to, have by legislative enactment established a point system for guidance of the commissioner in determining the status of a licensee as a habitual violator.

"The sufficiency of the standard expressed by the term 'habitual violator' must be viewed in light of the purpose for which the statute was enacted. It should be realistically conceded that in carrying out the objects of the statute the commissioner is required to make judgments based upon many and varied factors involving a great amount of detail. It is not unreasonable to assume that the legislature may well have considered that to prescribe a more specific standard would only place the commissioner in a straitjacket and interfere with the fair and efficient administration of his duties. * * In dealing with this vast area of administrative action, a flexible and practical guide is necessary."

 Continuing, the court said: "Permission to operate a motor vehicle upon the public highways is not embraced within the term 'civil rights' and is in the nature of a license or privilege. While ·the privilege is a valuable one, and may not be unreasonably or arbitrarily taken away, its enjoyment depends upon compliance with conditions prescribed by law and is always subject to such regulation and control as public authority may see fit to impose under the police power in the interest of public safety and welfare." The rationalization above set forth is here equally applicable and persuasive.

In support of the foregoing see also Spurbeck v. Statton, 252 Iowa 279, 290, 106 N.W.2d 660; 7 Am.Jur.2d, Automobiles and Highway Traffic, section 97, page 668, 109, page 675, 112, page 677; and Annos. 9 A.L.R.3rd 756.

IV. Of considerable significance is the fact a habitual offender act under which punishment for crime may be imposed is not here involved. This being a matter standing in the field of administrative law, we confine ourselves accordingly.

Our duty is to determine whether trial court's conclusion in the instant cases squares with applicable law. Sincerity of that tribunal is not questioned. However, the decision reached by it is so infected with fatal irregularity as to be illegal. See Anderson v. Hadley, 245 Iowa 550, 563, 63 N.W.2d 234.

It is to us evident the orders by plaintiff commissioner suspending operator's license of Thomas Ray Cowell, LeRoy Charles Mann and Myrle Joseph Dietzenbach, were in each instance lawfully issued.

We hold trial court erred, as a matter of law, in concluding the term "habitual violator", not being statutorily or administratively defined, is too uncertain and indefinite to permit lawful exercise of administrative sanction by state department of public safety.

Each of these cases must be remanded to trial court with direction to set aside any judgment vacating plaintiff commissioner's license suspension orders, and for entry of judgment in harmony herewith.

Writ sustained and each case remanded for entry of an order and judgment consistent with this opinion.

All Justices concur.