STATE of North Dakota, Plaintiff
and Respondent,

v.

Harvey Lee HARM, Defendant
and Appellant.

Cr. No. 426.

Supreme Court of North Dakota.

Aug. 31, 1972.

C. J. Schauss, Mandan, for defendant and appellant.

Helgi Johanneson, Atty. Gen., Bismarck, and Lester J. Schirado, State's Atty., Mandan, for plaintiff and respondent.

TEIGEN, Judge.

The defendant Harm has appealed from a final judgment in a post-conviction proceeding in which the trial court refused to set aside a conviction for driving a motor vehicle while his operator's license was suspended.

The conviction is being challenged in this post-conviction proceeding on the grounds that the conviction was in violation of the constitution of the United States and the constitution of the state of North Dakota, and that evidence exists of material facts not previously presented and heard. Section 29-32-01(1) (a) (d), N.D.C.C. (Uniform Post-Conviction Act), provides:

"1. Any person who has been convicted of, or sentenced for, a crime and who claims:

"(a) That the conviction or the sentence was in violation of the constitution, laws, or treaties of the United States or the constitution or laws of this state;

\*     \*     \*     \*     \*     \*

"(d) That there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;

\*     \*     \*     \*     \*     \*

"may institute, without paying a filing fee, a proceeding under this chapter to secure relief."

The order suspending Harm's operator's license, on which the State relied in the prosecution, was issued as one of a series of license suspension orders going back to April 28, 1967, when the first order was issued. It was issued on the ground that

Harm was an habitually reckless or negligent driver. The order suspended his license for thirty days. However, Harm violated this order, and also subsequent extension orders, by driving while his license was suspended and, as a result, there was almost a continuous suspension of his privilege to drive a motor vehicle from that date.

There is no dispute on the facts. In this proceeding Harm's position is that the first order, issued on April 28, 1967, was void because he was not given a hearing before the order was entered and, further, that the records in the possession of the commissioner of the North Dakota State Highway Department (hereinafter commissioner) did not establish that he was an habitually reckless or negligent driver. He also contends that the several subsequent extension orders further suspending his operator's license are also void because these are based on the first order which was void and, further, that he was not afforded a hearing before the extension orders were issued. He argues that the last extension order suspending his operator's license for one year, which the court found he had violated by driving a motor vehicle while his operator's license was suspended, was also void and that therefore the conviction must be set aside in these proceedings.

The statutes in effect in 1967, upon which the first order suspending Harm's license was entered on April 28 of that year, provided:

"The commissioner may suspend the license of an operator without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee:

"1. * * *

"2. * * *

"3. Is an habitually reckless or negligent driver of a motor vehicle; * *"
Section 39–06–32(3), N.D.C.C.

The record before the commissioner upon which the first order was made consists of three speeding violations, one stop sign violation and one stop light violation, all of which violations occurred within a six-month period from September 24, 1966, to March 24, 1967. It is further noted that all of these violations are contrary to the ordinances of the city of Mandan, North Dakota, and it is therefore concluded that the violations occurred within the city.

The first order, entered on April 28, 1967, suspended Harm's license for a period of thirty days. Under this order Harm surrendered his driver's license to the commissioner on May 15, 1967.

Harm did not request the hearing allowed him under the provisions of Section 39–06–33, N.D.C.C., which provided:

"Upon suspending the license of any person as authorized in section 39–06–32, the commissioner shall immediately notify the licensee in writing and upon his request shall afford him an opportunity for a hearing as early as practical within not to exceed twenty days after receipt of such request in the county wherein the licensee resides unless the department and licensee agree that such hearing may be held in some other county. Upon such hearing the commissioner or his duly authorized agent may administer oaths and may issue subpoenas for the attendance of witnesses and the production of relevant books and papers and may require a re-examination of the licensee. Upon such hearing the commissioner shall either rescind his order of suspension or, good cause appearing therefor, may continue, modify, or extend the suspension of such license or revoke such license." Ch. 277, S.L.1963, Sec. 8.

On May 7, 1967, Harm was apprehended while driving a motor vehicle and a traffic summons and complaint were issued charging him with driving a motor vehicle while his operator's license was suspended. He pleaded guilty to that charge and, upon receipt of the record of conviction, the com-

missioner, by order, extended the license suspension an additional thirty days and further ordered that Harm would not be entitled to a return of his license until he had furnished proof of financial responsibility. This order was also in compliance with the statute, which provides:

"The commissioner upon receiving a record of the conviction of any person upon a charge of driving a vehicle while the license of such person was suspended shall extend the period of such suspension for an additional like period * *"

Section 39–06–43, N.D.C.C.

The salient parts of Section 39–16.1–07 (2), N.D.C.C. (Ch. 281, S.L.1963), provided:

"If a person by final order or judgment is convicted of or forfeits any bail or collateral deposited to secure an appearance for trial for any offense requiring the revocation of license, or for operating a motor vehicle upon the highways while his privilege to drive is under suspension, revocation, or cancellation, or for driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug, or under the influence of any other drug to a degree which renders him incapable of safely driving a motor vehicle, no license shall be thereafter issued to such person until he shall give and thereafter maintain proof of financial responsibility." Ch. 281, S.L. 1963, Sec. 1.

It appears that Harm furnished proof of financial responsibility and a restricted driver's license was issued to him. The license was restricted to the operation of vehicles covered by the financial responsibility filing.

On November 24, 1967, Harm was apprehended and charged with violating the restriction and, after a plea of not guilty, was found guilty by the court after trial. Upon receipt of the record of conviction the commissioner, on January 11, 1968,

entered an order suspending Harm's license for three additional months.

On January 30, 1968, the commissioner entered another order suspending Harm's license because he had failed to maintain proof of financial responsibility (due to a cancellation of his insurance policy) as required by the order of May 24, 1967. Harm surrendered his restricted driver's license to the commissioner on January 19, 1968.

On June 25, 1968, Harm was involved in an automobile accident in the state of Minnesota and failed to deposit $375 security as required by Minnesota law. This fact was communicated to the commissioner of this state on September 11, 1968, and, under authority of Section 39–06–27, N.D. C.C., the commissioner entered an order suspending Harm's license and driving privileges in this state until the requisites of the Minnesota statutes had been complied with. The Minnesota requisites were met and the commissioner issued an order of rescission of the above order on July 25, 1969. The parties agree that this incident has no bearing on the issues in this proceeding.

On May 13, 1969, the commissioner received a report that Harm had forfeited bail, which is the equivalent to a conviction (Section 39–06–30, N.D.C.C.), on a careless driving charge for which he was cited on April 29, 1969. On this record the commissioner entered an order extending the suspension of Harm's driver's license for one year on the ground that he had permitted unlawful and fraudulent use of his license by operating a motor vehicle while his license was suspended, as provided by subsection 5 of Section 39–06–32, N.D.C.C.

On June 30, 1970, the commissioner issued an order of rescission which, according to the testimony of the acting director of the Safety Responsibility Division who is in charge, under the commissioner, of handling operators' licenses, ended all previous suspensions of Harm's operator's license. However, on June 23, 1970, the

commissioner received a record establishing that Harm had been convicted of driving a motor vehicle on July 13, 1969, which was at a time when his driver's license was suspended; therefore, on July 1, 1970, the commissioner issued an order suspending Harm's driver's license for one year, pursuant to Section 39–06–43, N.D.C.C. Harm surrendered his restricted driver's license to the commissioner on July 22, 1970.

A criminal complaint was issued charging that Harm, on or about September 30, 1970, drove a motor vehicle while his operator's license was suspended. He entered a plea of not guilty to the charge but was found guilty after trial and it is this conviction which he challenges in this post-conviction proceeding.

It is Harm's contention in these post-conviction proceedings that the order of suspension of April 28, 1967, was illegal because five misdemeanor convictions, three of which were for speeding and two of which were for failures to stop at a sign and signal, do not establish that the violator is an habitual negligent driver as provided under Section 39–06–32(3), N.D.C.C., and, secondly, that the commissioner violated Harm's due process rights under the Fourteenth Amendment to the United States Constitution when he required that Harm file proof of financial responsibility following subsequent convictions for driving while his driver's license was suspended without first affording him a hearing. He also argues that the extension suspensions were invalid because they were based on the first conviction which was invalid.

We are of the opinion that the issues raised are without merit.

■ The statutes pertaining to operators' or drivers' licenses are designed to promote safe driving upon the highways for the protection of the traveling public. Their purpose is to insure a minimum of competence and skill on the part of drivers of motor vehicles generally, and to provide protection for third persons who might otherwise be injured or have their property damaged by the negligent or reckless operation of vehicles on the public highways. They are to be liberally construed to the end that the greatest force and effect may be given to them. 7 Am.Jur.2d Automobiles and Highway Traffic, Section 93.

■ Permission to operate a motor vehicle upon the public highways is not a civil right nor is the license to do so a contract or property right in a constitutional sense but, rather, it is a mere license or privilege. Thompson v. Thompson, 78 N.W.2d 395 (N.D.1956). Although the privilege might be a valuable one (Helland v. Jones, 76 N.D. 511, 37 N.W.2d 513, 514 (1949)), nevertheless the license to drive may be revoked pursuant to the procedure and for violations of the conditions prescribed by the statute under which it was issued. Thompson v. Thompson, *supra*.

■ Harm contends that the commissioner erred when he determined that five misdemeanor violations, consisting of three violations for speeding, one violation for failure to stop at a stop sign, and one violation for failure to stop at a stop light in the city of Mandan, within a period of six months, made him an habitually reckless or negligent driver. These terms are not defined by the drivers' license statutes and, for this reason, Harm urges that to define these terms we must refer to the definition of reckless driving as contained in Section 39–08–03, N.D.C.C., which makes reckless driving a crime, and for a definition of the term "negligent" we must refer to Section 12–01–04, N.D.C.C., which defines the term "negligent" as used in our criminal statutes. Harm argues that if we apply these definitions and give weight to our decision in Morrell v. Hjelle, 128 N.W.2d 728 (N.D. 1964), in which case we held that violations must be serious violations in order to au-

thorize the commissioner to suspend an operator's license, then Harm's minor violations do not comport with the requirements of the statute. Harm argues that the commissioner was not authorized by statute to suspend here. In *Morrell* we were concerned with the commissioner's right to suspend a license under subsection 2 of Section 39–06–32, N.D.C.C., which provides that the commissioner may, without preliminary hearing, suspend an operator's license where the records show that the licensee "has been convicted of *serious* offenses against traffic regulations governing the movement of vehicles with such frequency as to indicate a disrespect for traffic laws and a disregard for the safety of other persons on the highways." [Emphasis added.] However, that case is not applicable here as we are concerned with subsection 3, set forth above, which provides for a suspension where the person "is an habitually reckless or negligent driver of a motor vehicle." We find that the record before the commissioner of the above described five violations within a six-month period does justify the commissioner, in his discretion, to determine the licensee to be an habitual negligent driver when viewed in the light of the purpose for which the statutes were enacted. It must be realistically conceded that in carrying out the objects of the statutes the commissioner is required to make judgments based upon many varied factors involving a great many details. We recognize that in 1969 the Legislature amended the statutes to provide guidelines for the commissioner in making this determination, under subsection 3, but these were not in effect at the time of the suspension in 1967 and the commissioner was left to make judgment based on his records.

In Sueppel v. Eads, 261 Iowa 923, 156 N.W.2d 115 (1968), the supreme court of Iowa affirmed the suspension of three persons' licenses to operate motor vehicles under a term used in the Iowa statutes authorizing suspension of a license of an "habitual violator." One suspension was for three speeding violations and one violation disobeying a traffic signal; the suspension of another was for failure to stop at a stop sign and disobeying a traffic signal; and the third suspension was for three violations of speeding. In none of the cases was it indicated how many miles per hour over the limit these persons were speeding. The court concluded that where the term "habitual violator" was not statutorily or administratively. defined it was not too uncertain and indefinite to permit the lawful exercise of administrative sanction by the State Department of Public Safety, and sustained the suspension of these three operators' licenses by the administrative officer.

In 7 Am.Jur.2d Automobiles and Highway Traffic, Section 113, it is written:

"One's driver's license is subject to suspension or revocation under some statutes where he is a habitually reckless or negligent driver. Such statutes have been held valid as against the contention that they fail to contain any fixed standard or guide to which the suspending or revoking officials must conform to determine whether or not a driver is a habitually reckless or negligent driver. It has been said that the terms "habitual," "reckless," and "negligent" are well known to all and the suspending or revoking officials have thereby a definite and tangible standard to guide them in their determination."

We hold that the statute in effect on April 28, 1967, when the first order suspending Harm's driver's license was entered, and the action of the commissioner in suspending the license for thirty days on the basis of the record before him, were valid.

Having disposed of the contention that the April 28, 1967, suspension was invalid, there is no need to consider the contention that subsequent extensions of sus-

pensions, based upon the original order, were invalid. Therefore, we will now consider the constitutional question.

■ The constitutional attack is based upon the holding in Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). In this case the Supreme Court of the United States set aside a Georgia statute as being in violation of the due process clause of the Fourteenth Amendment to the United States Constitution on the ground that the statute, under Georgia's Safety Responsibility Act, made the question of liability as the result of an automobile accident an important factor in the state's determination to deprive a person of his driver's license and vehicle registration. The court found that the Georgia statutory scheme was developed around a liability-related concept and, therefore, the state may not consistently, with due process, eliminate consideration of the factor of liability in its hearing before suspension. The court, in interpreting the Georgia statute, found that the question of liability "in the sense of an ultimate judicial determination of responsibility, plays a crucial role in the Safety Responsibility Act." A reporter of decisions has prepared a syllabus in the *Bell* case in which he has succinctly stated the court's holding as follows:

"Georgia's Motor Vehicle Safety Responsibility Act, which provides that the motor vehicle registration and driver's license of an uninsured motorist involved in an accident shall be suspended unless he posts security for the amount of damages claimed by an aggrieved party and which excludes any consideration of fault or responsibility for the accident at a pre-suspension hearing *held* violative of procedural due process. Before Georgia, whose statutory scheme *significantly involves the issue of liability*, may deprive an individual of his license and registration, it must provide a procedure for determining the question whether there is a

reasonable possibility of a judgment being rendered against him as a result of the accident." [Emphasis added.] Bell v. Burson, 91 S.Ct. 1586, 1587.

Our court considered the *Bell* decision in Kosmatka v. Safety Responsibility Division, 196 N.W.2d 402 (N.D.1972), which case involved the suspension of a driver's license for a DWI conviction. In Syllabus No. 3 we said:

"Except in emergency situations due process requires that when the State seeks to terminate a driver's license, it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective."

In *Kosmatka* we held that the commissioner's right to suspend a driver's license for DWI comes within the emergency exception as enunciated in *Bell* and that, therefore, a hearing was not required under the due process clause before suspending the driver's license of one convicted of that offense. Upon further study of *Bell* and our statutes, as they relate to this case, we find that the North Dakota statutory scheme, under the Operators' Licenses chapter (39–06, N.D.C.C.) and Section 39–16.1–07(2), N.D.C.C., which requires that a driver who operates a motor vehicle upon our highways while his operator's license is under suspension must furnish and maintain proof of financial responsibility, are not developed around liability-related concepts, which was the basis of the holding in *Bell*.

Our statutes provide that it is a misdemeanor to drive a motor vehicle upon the highways when the privilege to do so is suspended (Section 39–06–42, N.D.C.C.). The trial court is required to forward within ten days to the commissioner a record of the conviction of any person in that court for such a violation, as well as other moving violations on the highway (Section 39–06–29, N.D.C.C.). The commissioner, upon receiving a record of the conviction of

any person upon a charge of driving a vehicle while the license or driver's privilege of such person is suspended, shall extend the period of such suspension for an added like period and, if the original suspension was for an indefinite or unstated period of time, shall order an additional suspension for six months (Section 39–06–43, N.D.C.C.); provided such license or driving privilege shall remain suspended and shall not thereafter be renewed nor a license issued to such person unless he shall give and thereafter maintain proof of financial responsibility (Section 39–16.1–07, N.D.C.C.). Such proof of financial responsibility means proof to respond to damages for liability on account of accidents occurring subsequent to the effective date of said proof. Section 39–16.1–02, N.D.C.C.

Thus our statutes in respect to this offense are not developed around a liability-related concept as was the Georgia statutory scheme. Under our statutes the operator is not required to furnish proof of responsibility until after his conviction for driving while his license is suspended, whereas under the Georgia statute, considered in *Bell*, the motor vehicle registration and his driver's license, if he was an uninsured motorist involved in an accident, was to be suspended unless he posted security to cover the amount of the damages claimed by the aggrieved party in the report of the accident, and gave proof of financial responsibility for the future, unless, prior to suspension, there was an adjudication of nonliability or a release from liability was furnished, executed by the injured party, and certain other exceptions. Under the Georgia statutes the administrative hearing conducted prior to the suspension excluded consideration of the motorist's fault or liability for the accident and did not afford him a hearing on these questions. The supreme court found that the Georgia statutes were developed around liability-related concepts and held that the state may not, consistent with due process,

eliminate consideration of that factor in its prior hearing. It held that, under the Georgia scheme, before the state could deprive a motorist of his driver's license and vehicle registration it must provide a forum for a determination of the question of whether "there is reasonable possibility of a judgment being rendered against him as a result of the accident", and limited its holding to this requirement. Under our statutory scheme a conviction is required before the statutes are operative, and the proof of financial responsibility to be filed is only for the future.

Thus our statutes, insofar as they operate upon a motorist who drives while his operator's license is suspended, are not liability-related in the sense that the Georgia statute was liability-related, and are not, in our opinion, unconstitutional as being in violation of the due process clause of the United States Constitution.

Because of the action of the commissioner in suspending Harm's license for an additional period because his record showed that he had operated a motor vehicle while his operator's license was under suspension is not liability-related, we hold that *Bell* is not applicable and the due process clause of the Federal Constitution was not violated.

"Financial responsibility acts or provisions thereof have been held to constitute a proper exercise of the police power of the state, and the courts have generally upheld the validity of various state motor vehicle financial responsibility acts against objections of all varieties. Such acts have been held not to violate constitutional equal protection clauses, due process clauses, provisions against self-incrimination, prohibitions of imprisonment for debt, prohibitions against ex post facto laws, or provisions relating to the titles and definiteness and certainty of statutes. Such acts have also been sustained as against the contention that they are in conflict

with the Federal Bankruptcy Act, or infringe on the power of municipalities, or are invalid as special legislation." 7 Am.Jur.2d Automobiles and Highway Traffic, Section 135.

For the reasons aforesaid, we affirm the judgment denying post-conviction relief.

STRUTZ, C. J., and KNUDSON, J., concur.

ERICKSTAD, Judge (concurring specially).

I concur in Judge Teigen's opinion only as to its result.

I do not agree with his analysis of Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), of the Georgia statutes and our statutes, nor with his conclusion that our financial responsibility statutes are not liability related.

PAULSON, J., concurs.