**STATE of North Dakota, Respondent,**

v.

**Richard Walter SINNER, Petitioner.**

Cr. No. 437.

Supreme Court of North Dakota.

April 13, 1973.

Thomas F. Kelsch, State's Atty., and Dennis A. Schneider, Asst. State's Atty., Burleigh County, Bismarck, for respondent.

George E. Duis, Fargo, for petitioner.

PAULSON, Judge.

Richard Walter Sinner [hereinafter petitioner] is applying to this court for a writ of habeas corpus under Chapter 32–22 of the North Dakota Century Code. He was confined in the Burleigh County jail by an order of the Burleigh County Court dated January 3, 1973, upon his conviction of driving while his operator's license was suspended. The six-month jail sentence imposed on October 14, 1971, was suspended on condition that there would be no further traffic violations by petitioner. However, petitioner was convicted of subsequent traffic violations and, on July 26, 1972, said suspension order was revoked and the petitioner was ordered to commence serving his six-month sentence. Execution of this order was stayed for a period of six months to allow petitioner to challenge the constitutionality of the statutory procedure by which his driver's license was suspended. This stay was conditioned on petitioner's not operating a mo-

tor vehicle during the period of such stay, unless he first obtained a license to do so. Again, petitioner did not abide by the conditions imposed by the court and he was found guilty in Grand Forks Municipal Court on December 5, 1972, of speeding and driving while his license was suspended. Accordingly, on January 3, 1973, the Burleigh County Court revoked the stay of execution of its order of July 26, 1972, and ordered the petitioner to surrender himself to the Burleigh County sheriff to commence serving the six-month sentence imposed on October 14, 1971.

The petitioner then applied to the District Court of Burleigh County for a writ of habeas corpus, which writ was issued and, after a hearing, was quashed on January 17, 1973. Petitioner now applies for an original writ of habeas corpus from this court.

The petitioner raises several issues in his application for a writ of habeas corpus. The principal issue is that the statutory procedure by which his driver's license was suspended by the Safety Responsibility Division of the North Dakota State Highway Department is unconstitutional as being violative of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Specifically, the petitioner asserts that, prior to the suspension of his driver's license, he is entitled to a hearing before the State Highway Department.

In support of his contention, the petitioner cites the recent United States Supreme Court decision in Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90. In *Bell*, the United States Supreme Court dealt with Georgia's Motor Vehicle Safety Responsibility Act, Georgia Code Annotated § 92A–601 et seq. (1958), which provides that the motor vehicle registration and driver's license of an uninsured motorist involved in an accident shall be suspended unless he posts security to cover the amount of damages claimed by aggrieved parties in reports of the accident.

The administrative hearing conducted prior to suspension did not deal with the issue of fault or liability for the accident. The United States Supreme Court held that, in order to comply with procedural due process under the Fourteenth Amendment, this pre-suspension hearing must deal with the liability of the driver for causing the accident, at least to the extent necessary to determine whether there is a reasonable possibility of judgments in the amounts claimed being rendered against the licensee.

The petitioner also cites Reese v. Kassab, 334 F.Supp. 744 (1971), wherein a three-judge Federal District Court held that the Pennsylvania point system for driver's license suspension contravened the Due Process Clause of the Fourteenth Amendment. The Pennsylvania statute in question, 75 Pennsylvania Statutes § 619.1, provided for assessment of points against a licenseholder's driving record for certain specified offenses. There was no hearing provided for at the time of each assessment of points nor prior to the time a driver's license was mandatorily suspended for 60 days after a total of at least 11 points was accumulated against his driving record. The court in Reese v. Kassab, *supra,* held that the Pennsylvania point system for driver's license suspension was appropriate so long as such system was administered in compliance with procedural due process as prescribed by the Fourteenth Amendment. However, the *Reese* court further held that, prior to the suspension of a driver's license, procedural due process required an administrative hearing before the Department of Transportation of Pennsylvania.

The decisions covering the issue of the constitutionality of suspending a driver's license without a pre-suspension hearing are not in accord. The Court of Appeals of Kentucky, in the case of Commonwealth of Kentucky, Department of Public Safety v. Thomas, 467 S.W.2d 335 (1971), held that the Kentucky statute which allowed discretionary suspension of a driver's license without a pre-suspension hearing was unconstitutional. That statute, Kentucky Revised Statutes 186.570(1), provides in pertinent part:

> "The department . . . may immediately suspend the license of any person . . . with or without hearing, and with or without receiving a record of conviction of that person of a crime, whenever the department has reason to believe that:" [The statute then lists seven causes for suspension.]

The license of the driver in the *Thomas* case, *supra,* was suspended under subsection (2) of KRS 186.570, which provides in pertinent part:

> "The department may suspend the license of any resident upon receiving notice of the conviction of that person in another state of an offense there which if committed in this state would be grounds for the suspension or revocation of an operator's license. . . . "

The court in the *Thomas* case determined that there must be an evidentiary hearing prior to a discretionary suspension under KRS 186.570 in order to comply with the requirements of due process under the Fourteenth Amendment to the United States Constitution.

The Court of Chancery of Delaware, in the case of Broughton v. Warren, Del.Ch., 281 A.2d 625 (1971), reached the opposite conclusion with regard to its discretionary suspension law. Section 2733(a), 21 Del. C., provides in pertinent part:

> "(a) The Department may immediately suspend the license . . . of any person without hearing and without receiving a record of conviction of such person of crime whenever the Department has reason to believe that such person— . . . " [The statute then lists six causes for suspension.]

Subsection (b) of § 2733, Del.C., provides for a post-suspension hearing, as does our North Dakota § 39–06–33, N.D.C.C.

■ The driver in the *Broughton* case, *supra*, had been convicted of four or five separate motor vehicle offenses, had received six warnings for speeding violations, had been in five accidents, and had had his license suspended twice. The Delaware court in the *Broughton* case, *supra* 281 A.2d at 628, quoted from the case of Bell v. Burson, *supra* 402 U.S. at 542, 91 S.Ct. 1591 in which case the United States Supreme Court stated:

" ' . . . it is fundamental that except in emergency situations (and this is not one) due process requires that when a State seeks to terminate an interest such as that here involved, it must afford "notice and opportunity for hearing appropriate to the nature of the case" *before* the termination becomes effective.' "

The Delaware court held that the driver's record in *Broughton* came within the purview of the emergency doctrine enunciated in the *Bell* decision and that a pre-suspension hearing was not required in order to comply with the requirements of due process. Taking judicial notice of the serious injuries and deaths occurring on our highways, the Delaware court stated in Broughton v. Warren, *supra* 281 A.2d at 629:

"The suspension of a driver's license, under the kind of statute and proceeding here involved, is not to punish the driver but to protect the public from those who have demonstrated that their driving presents a hazard to life and property." Citing Bungardeanu v. England, 219 A. 2d 104 (D.C.Ct.App.1966).

After considering the *Broughton* and *Thomas* decisions, we adopt the view expressed by the Supreme Court of Delaware in the *Broughton* case.

In the case of Kosmatka v. Safety Responsibility Division of the North Dakota State Highway Department, 196 N.W.2d 402 (N.D.1972), we held that a conviction for driving while intoxicated came within the purview of an emergency situation, under Bell v. Burson, *supra*, and that our statute providing for mandatory revocation upon such conviction, § 39–06–31(6), N.D. C.C., did not deny constitutional due process even though a pre-suspension hearing was not provided. This holding was based partially on the fact that the Legislature had determined a DWI conviction to be an emergency situation by requiring the commissioner to forthwith revoke the license of any operator upon receiving a record of such operator's conviction for driving a motor vehicle while under the influence of intoxicating liquor.

■ In *Kosmatka* we cited the *Broughton* case, *supra,* and concluded that the factual situation existing in *Kosmatka* fell between the factual situations existing in *Broughton* and in *Bell*. We now hold, as did the Delaware court in Broughton v. Warren, *supra*, that a record of frequent driving violations constitutes an emergency situation under the *Bell* decision and that the public interest in removing an offender from the highways outweighs an individual's right to a hearing prior to suspension of his operator's license. In the instant case the petitioner's license was suspended under § 39–06–32(7), N.D.C.C., for four convictions occurring within a two-year period. The petitioner, within one year and twenty days acquired three speeding convictions while he was operating a motor vehicle at speeds in excess of ten miles per hour over the speed limits; and one conviction for driving on property to avoid a traffic signal. *Cf.* Lill v. Thompson N.D. 84 N.W.2d 733, 735 (1957). The petitioner's driving record in the instant case is replete with further driving incidents which occurred subsequent to the order dated April 19, 1971, suspending his driver's license. The violations consisted of a stop sign conviction, a speeding conviction, and a driving-without-a-license conviction; together with an accident, and four additional orders extending the April 19, 1971, suspension of his driving privileges. The public is entitled to protection from a motor vehicle operator who demonstrates such

a blatant disregard for the rules of the road.

Furthermore, the petitioner had an opportunity for a hearing each time that he was charged with the offenses for which he was ultimately convicted through forfeitures of bonds. He chose not to take advantage of these opportunities to contest the motor vehicle violation charges; or of the opportunity, when his license was suspended, for a post-suspension hearing provided him by the highway commissioner pursuant to § 39–06–33, N.D.C.C. Since petitioner failed to appear at any of the hearings, he cannot now complain that he was denied procedural due process.

The petitioner also asserts that he did not receive proper notice of his license suspension, since the letter sent to him advising him of the suspension was not mailed to him by registered or certified mail as required by § 28–32–13, N.D.C.C. Section 28–32–13, N.D.C.C., provides in pertinent part:

". . . The agency shall give notice of its decision or determination *in any proceeding heard by it* by delivering a copy of such decision or determination to all the parties to the proceeding either personally or by registered or certified mail . . ." [Emphasis added.]

Section 28–32–13 connotes a hearing at which briefs have been filed and arguments heard. There is no such procedure provided for under the statutes at issue in this case. As is obvious, § 28–32–13 applies to a proceeding heard by an administrative agency. When a driver's license is suspended, there is no pre-suspension hearing provided for. Rather the suspension of a driver's license is in the nature of a ministerial duty performed by the Safety Responsibility Division of the North Dakota State Highway Department.

In addition, in the case of State v. Johnson, 139 N.W.2d 157 (N.D.1965), where the defendant driver claimed the State did not prove that such driver had received notice of suspension orders since they were addressed to him at Esmond, North Dakota, from which address he had moved to Minnewaukan, North Dakota, this court held such contention to be without merit on the ground that it is a driver's duty to keep the highway commissioner informed of any change in such driver's address. The court stated in the *Johnson* case, *supra,* in paragraph 1 of the syllabus:

"1. Where a defendant is served with order of suspension of his driver's license by the mailing of copy of such order to him at the address shown on his application for driver's license or address shown on such license, he cannot complain on the ground that he no longer lives at that address. The law requires the holder of a driver's license to notify the Highway Commissioner in writing of any change of address within ten days after such change. Sec. 39–06–20, N.D. C.C."

We adhere to this holding in the *Johnson* case; thus the petitioner's argument in the instant case is not persuasive.

The petitioner next asserts that he has been twice put in jeopardy for the same offense, in contravention of the Fifth Amendment to the Federal Constitution. In the case of Anderson v. Commissioner of Highways, State of Minnesota, 267 Minn. 308, 126 N.W.2d 778 (1964), the appellant's driver's license was suspended for one year, pursuant to Minnesota Statutes § 171.18, on the ground that he was an habitual violator. The Minnesota Supreme Court, in upholding the discretionary suspension in the *Anderson* case, held, in paragraph 3 of the syllabus:

"3. Suspension of a driver's license is an exercise of police power for the protection of the public rather than the imposition of an additional penalty; accordingly, usual guarantees against double jeopardy, as well as the statute of limitations, do not apply."

Also, in the case of Thompson v. Thompson, 78 N.W.2d 395, 399 (N.D.1956), this court quoted from the case of Prichard v. Battle, 178 Va. 455, 17 S.E.2d 393, 395 (1941), in which case the Virginia court stated:

" 'The question as to whether the revocation of a license because of an act for which the licensee has been convicted or because of the conviction itself is an added punishment has frequently been before the courts. The universal holding is that such a revocation is not an added punishment, but is a finding that by reason of the commission of the act or the conviction of the licensee, the latter is no longer a fit person to hold and enjoy the privilege which the State had theretofore granted to him under its police power. The authorities agree that the purpose of the revocation is to protect the public and not to punish the licensee.' "

We accordingly determine that the petitioner in the instant case has not been twice put in jeopardy for the same offense.

■ Petitioner further asserts that his Minnesota conviction for speeding on March 31, 1971, should not be included in the four offenses committed within a two-year period needed for suspension under § 39–06–32(7), N.D.C.C. The Minnesota speeding conviction resulted from the forfeiture of a bond. We are of the opinion that such an out-of-State violation should be included in the number of convictions required before the suspension of a driver's license. When a driver who is licensed in North Dakota commits a driving infraction in another State, such out-of-State infraction does not limit the authority which North Dakota has over his driving record. Such driver no doubt will return to North Dakota where his propensity for committing driving infractions will further endanger the public. Section 39–06–32(6), N.D.C.C., empowers the highway commissioner to suspend the North Dakota driver's license of a driver who has committed an offense in another State, which offense, if committed in this State, would be grounds for suspension of his driver's license. In addition, § 39–06–27, N.D.C.C., provides, in pertinent part:

"The commissioner may suspend or revoke the license of any resident of this state or the privilege of a nonresident to drive a motor vehicle in this state upon receiving notice of the conviction of such person in another state of an offense therein which, if committed in this state, would be grounds for the suspension or revocation of the license of an operator."

Sections 39–06–27 and 39–06–32(6), N.D. C.C., indicate that foreign convictions are included in the number of convictions required to suspend a driver's license, since these statutes express a legislative concern over the driving record of North Dakotans wherever they drive.

The petitioner asserts further that even if a post-suspension hearing is sufficient to satisfy the requirements of due process, the hearing provided in North Dakota is not in compliance with due process since the functions of judge, prosecutor, and jury are embodied in the highway commissioner or his agent. We find this contention to be without merit.

In 1 Am.Jur.2d, Administrative Law § 78, page 873, it is stated:

"The danger of unfairness is particularly great in an agency in which there is a high degree of concentration of both prosecuting and judicial functions, especially where the functions are combined in the same men. The courts have pointed out that in such situations the agency members must be zealous in the recognition and preservation of the right to a hearing by impartial triers of the facts, and such fusion of functions has been subjected to considerable criticism. However, the combination of functions has never been held to violate constitutional right or deny due process of law."

If there is a prosecuting function in the North Dakota State Highway Department, it is performed by its Safety Responsibility Division, since such division maintains driving records and issues suspension orders. The commissioner of the North Dakota State Highway Department, through its legal division, conducts administrative hearings involving suspension orders, if such hearings are requested, pursuant to § 39–06–33, N.D.C.C. The petitioner has not contended in the instant case that such legal division of the State Highway Department is not zealous in preserving the right to an impartial hearing for a driver whose license has been suspended.

■ As was stated in 1 Am.Jur.2d, Administrative Law § 78, at page 873, the combination of prosecuting and judicial functions has never been held to violate due process, and since the petitioner at no time requested a hearing before the State Highway Department, he now has no premise upon which to base his assertion that he would not have been accorded a meaningful hearing.

On July 26, 1972, the Burleigh County Court issued its order revoking the suspended sentence of petitioner. The suspended sentence was revoked because of petitioner's convictions subsequent to October 14, 1971, for traffic violations, which included speeding and operating a motor vehicle while petitioner's driver's license was suspended. Petitioner was ordered to commence serving his six-month sentence, but execution of such order was stayed for six months from July 26, 1972, to allow the petitioner to challenge the constitutionality of the statutory procedure under which his driver's license was suspended. This stay of execution was conditioned, among other things, upon petitioner's not operating a motor vehicle during said period of six months unless he first obtained a license to do so.

Petitioner contends that if the statutory procedure by which his driver's license was suspended is unconstitutional, he need not abide by a court order issued pursuant to a conviction for violation of such statutes, because such order would be null and void and of no effect. Having decided herein that the statutory procedure by which the petitioner's driver's license was suspended is constitutional, we need not consider this issue further.

For the foregoing reasons the writ of habeas corpus is quashed.

STRUTZ, C. J., and ERICKSTAD and KNUDSON, JJ., concur.

TEIGEN, Judge (concurring specially).

I concur in the result. However I do not agree that a conviction of driving while a person's operator's license is suspended constitutes an "emergency situation" as envisioned under Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Bell lays down a rule which is restricted to a situation where "a State seeks to terminate an interest such as that here involved." The "situation here involved" in Bell concerns Georgia's Motor Vehicle Safety Responsibility statute which provides that an uninsured motorist's vehicle registration and driver's license are subject to suspension if he is involved in an accident and fails to post security to cover the amount of damages claimed by the aggrieved party unless he has filed a release from liability executed by the injured party or there has been an adjudication of nonliability. The United States Supreme Court in Bell found that Georgia's statute was liability related and, therefore, procedural due process required a determination of whether there was a reasonable possibility of a judgment being rendered against the driver as a result of the accident before the State could suspend the person's automobile registration and driver's license The court, in its reasoning, stated:

"Thus, we are not dealing here with a no-fault scheme. Since the statutory scheme makes liability an important fac-

tor in the State's determination to deprive an individual of his licenses, the State may not, consistently with due process, eliminate consideration of that factor in its prior hearing." Bell v. Burson, *supra*, 402 U.S. at 541, 91 S.Ct. 1586 at 1590, 29 L.Ed.2d at 96.

The court concluded that the State must provide a forum for the determination of the question of whether there was a reasonable possibility of a judgment being rendered against the driver as a result of the accident before his driver's license and vehicle registration could be suspended, and then stated:

"We deem it inappropriate in this case to do more than lay down this requirement." Bell v. Burson, *supra*, 402 U.S. at 542, 91 S.Ct. at 1591, 29 L.Ed.2d at 96.

As analyzed in State v. Harm, 200 N. W.2d 387 (N.D.1972), our statutory scheme is not liability related, that is, it is not fault related. Section 39–06–42, N.D. C.C., makes it a misdemeanor to drive a motor vehicle upon the highways when the privilege to do so is suspended. On conviction the trial court must forward to the commissioner a record of the conviction. Section 39–06–29, N.D.C.C. The commissioner, upon receipt of the record of conviction, shall extend the period of suspension for an added like period. Section 39–06–43, N.D.C.C. Where this has occurred, the license or driving privilege of such person shall remain suspended and shall not thereafter be renewed or a license issued to such person unless he shall comply with the Financial Responsibility Act. Section 39–16.1–07(2), N.D.C.C. The Financial Responsibility Act provides that financial responsibility means proof to respond in damages for liability on account of accidents occurring subsequent to the effective date of said proof. Section 39–16.1–02, N.D.C.C.

Therefore under our statutory scheme, if an accident occurred while the motorist was driving while his license was suspended, the action taken by the commissioner in respect to that person's driver's license, or the filing of proof of financial responsibility to obtain a renewal or issuance of a driver's license by such person, is in no way fault or liability related as no security need be filed to cover damages, if any, resulting from the past illegal driving.

For these reasons it is my opinion that *Bell* does not apply and for reasons set forth in State v. Harm, *supra*, procedural due process does not require a presuspension hearing.