**STATE of Minnesota, Respondent,**

v.

**Randy Charles HANSON, Petitioner, Appellant (C1-95-531),**

and

**Joseph Michael Burns, Petitioner, Appellant (5-95-564).**

Nos. C1–95–531, C5–95–564.

Supreme Court of Minnesota.

Jan. 19, 1996.

Donald H. Nichols, John A. Fabian, Paul J. Lukas, Minneapolis, for appellant Hanson.

Samuel A. McCloud, Kelly Vince Griffitts, Shakopee, for appellant Burns.

Elliott B. Knetsch, Andrea M. Poehler, Eagan, Hubert H. Humphrey III, Nancy Bode, Office of the Atty. Gen., St. Paul, Thomas D. Hayes, Thomas C. McNinch, Sherbourne County Attorney's Office, Elk River, for respondent,

## OPINION

KEITH, Chief Justice.

This consolidated appeal raises the issue of whether Minnesota's statutory scheme of civil driver's license revocation followed by criminal prosecution for driving under the influence of alcohol or controlled substances is unconstitutional under the Double Jeopardy Clauses of the United States and Minnesota Constitutions. In these two cases, appellants had their driver's licenses revoked for 90 days under Minnesota's implied consent statute, Minn.Stat. § 169.123 (1994) ("implied consent statute"), and subsequently faced criminal charges for violating Minnesota's DUI statute, Minn.Stat. § 169.121 (1994) ("DUI statute"). Because civil license revocation pursuant to the implied consent statute can fairly be characterized as remedial, we hold that Minnesota's statutory scheme of civil license revocation followed by criminal prosecution is constitutional under double jeopardy principles.

The facts are generally undisputed. Appellant Randy Charles Hanson ("Hanson") was driving in Sherburne County when he was pulled over for erratic driving. Hanson was arrested for driving under the influence after failing a breath test, and he then took a urine test, which disclosed an alcohol concentration of 0.17. Based on this test result, he was charged with driving under the influence, driving with an alcohol concentration of 0.10 or more, and driving within two hours of having an alcohol concentration of 0.10 or more, in violation of Minn.Stat. § 169.121, subds. 1(d) and (e). Hanson's driver's license was revoked for 90 days pursuant to the implied consent statute. Hanson then moved to dismiss the subsequent criminal charges on the grounds that pursuing the criminal charges after revoking his driver's license constituted double jeopardy. The district court denied the motion, but certified the double jeopardy question to the court of appeals.

Appellant Joseph Michael Burns ("Burns") was arrested for driving under the influence in Lakeville. Burns submitted to a breath test, which disclosed an alcohol concentration of 0.15. Based on this test result, he was charged with driving under the influence, driving with an alcohol concentration of 0.10 or more, and driving within two hours of having an alcohol concentration of 0.10 or more, in violation of Minn.Stat. § 169.121, subds. 1(d) and (e). Burns' driver's license was revoked for 90 days pursuant to the implied consent statute. Burns first challenged the implied consent license revocation pursuant to Minn.Stat. § 169.123, subd. 5(c), but the district court sustained the revocation. Burns then moved to dismiss the criminal charges on the grounds that pursuing the criminal charges after revoking his driver's license constituted double jeopardy. The district court granted his motion and certified the double jeopardy question to the court of appeals.

The court of appeals consolidated the two appeals and held that:

A 90–day implied consent driver's license revocation for a driver who has failed the chemical test is rationally related to the remedial purpose of protecting public safety by removing intoxicated drivers from the highways and is not so "overwhelmingly disproportionate" to the threat posed to public safety that it is "punishment" for purposes of the Double Jeopardy Clause.

*State v. Hanson,* 532 N.W.2d 598, 599 (Minn. App.1995).

On appeal to this court, appellants argue that civil driver's license revocation is "punishment" under the Double Jeopardy Clause, and therefore bars any subsequent criminal charges for the same conduct. The state counters that license revocation is remedial, not "punishment," and is rationally related to the legitimate governmental purpose of re-

moving drunk drivers from Minnesota's streets and highways.

## I.

The Double Jeopardy Clauses of the United States Constitution and the Minnesota Constitution protect a criminal defendant from three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989); *State v. Fuller*, 374 N.W.2d 722, 726–27 (Minn.1985). At issue here is whether civil driver's license revocation followed by criminal punishment for driving under the influence constitutes multiple punishments for the same offense.

The constitutional prohibitions against double jeopardy will bar either appellant's criminal prosecution only if: (1) punishment is for the same offense; (2) license revocation and criminal prosecution occur in separate proceedings; and (3) license revocation constitutes punishment. *Halper*, 490 U.S. at 441, 109 S.Ct. at 1898. Because the civil driver's license revocation and criminal prosecution seek redress for the commission of the same offense (drunk driving) and occur in separate proceedings, the sole issue is whether the driver's license revocation constitutes "punishment" for double jeopardy purposes.

The United States Supreme Court has not decided whether a driver's license revocation triggers double jeopardy protection and thus bars subsequent criminal prosecution for the same conduct. This court decided over 30 years ago that a driver's license revocation followed by criminal punishment does not violate any constitutional protections against double jeopardy. *Anderson v. Commissioner of Hwys.*, 267 Minn. 308, 316–17, 126 N.W.2d 778, 783–84 (1964). Appellants, however, seek reconsideration of our holding in *Anderson* in light of the Supreme Court's recasting of double jeopardy jurisprudence in *Halper*. Numerous state courts have consid-

ered this issue over the past year, with the overwhelming majority rejecting such claims.[1]

Prior to 1989, courts turned to the test established by the Supreme Court in *United States v. Ward* to determine whether a statute or a noncriminal proceeding violated double jeopardy protections. 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). The *Ward* test focused heavily on which label, civil or criminal, Congress had attached to a particular sanction. *Id.* at 249, 100 S.Ct. at 2641.

In 1989 the Supreme Court in *Halper* rejected the formalistic *Ward* approach, concluding that in determining whether proceedings were criminal or civil, "the labels 'criminal' and 'civil' are not of paramount importance." *Halper*, 490 U.S. at 447, 109 S.Ct. at 1901. Because *Halper* was envisioned as "a rule for the rare case," and has fundamentally changed double jeopardy jurisprudence, a consideration of its facts merits discussion here. In *Halper*, a unanimous Court held that the multiple-punishments prong of the Double Jeopardy Clause prevented the federal government from imposing $130,000 in civil penalties against a defendant who already had been criminally prosecuted for the same conduct, namely the submission of $585 in false Medicare claims.

Halper, a manager of a medical services company, submitted 65 false claims for reimbursement under the federal Medicare program, defrauding the government of $585. *Id.* at 437, 109 S.Ct. at 1895–96. The government brought charges under the criminal false-claims statute, convicting him of all 65 counts. He was sentenced to two years imprisonment and fined $5,000. *Id.*

The government then brought suit under the civil false-claims act, which provided at that time for a penalty of $2,000 for each false claim. *Id.* at 438, 109 S.Ct. at 1896 (citing 31 U.S.C. § 3729 (1982 ed., Supp. V)). Because Halper violated the act 65 times, he was potentially subject to a fine of $130,000 for defrauding the government of $585. The

---

1. *See, e.g. State v. Cassady*, 140 N.H. 46, 662 A.2d 955 (1995); *State v. Savard*, 659 A.2d 1265 (Me. 1995); *Davidson v. MacKinnon*, 656 So.2d 223 (Fla.App. 5 Dist.); *State v. Higa*, 897 P.2d 928 (Hawai'i 1995); *State v. Miller*, 1995 WL 275770 (Ohio App. 3 Dist. May 12, 1995).

district court concluded that this fine, roughly 220 times greater than the government's actual loss, was "punishment" barred by the Double Jeopardy Clause due to Harper's previous conviction. *Id.* at 439–40, 109 S.Ct. at 1897.

The government appealed directly to the Supreme Court, which affirmed. In determining whether a civil penalty may constitute "punishment" for double jeopardy purposes, the Court observed that:

> a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.

*Id.* at 448, 109 S.Ct. at 1902. The Court thus held that

> under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

*Id.* at 448–49, 109 S.Ct. at 1902.

While *Halper* replaced *Ward*, the exact nature of the new "test" to be used in double jeopardy cases is subject to some debate. The two "tests" quoted above are strikingly dissimilar. The first is a "solely remedial" test. Applied literally, it would appear to invalidate on double jeopardy grounds any remedial civil sanction also "serving either retributive or deterrent purposes," no matter how minor. The second is a "solely deterrent/retributive" test. Applied literally, it would appear to uphold on double jeopardy grounds any civil sanction which "may fairly be characterized as remedial."

■ The first issue before this court, therefore, is to determine the proper test to draw from *Halper.* Appellants argue that

the court of appeals erroneously adopted the "solely deterrent/retributive" test, failing to consider the Court's use of the "solely remedial" test in *Austin v. United States,* 509 U.S. 602, ——, 113 S.Ct. 2801, 2806, 125 L.Ed.2d 488 (1993). We disagree.

Appellants correctly argue that the Court in *Austin* used the "solely remedial" test of *Halper.* Yet just one year later, the Court referred to the specific holding of *Halper* and adopted the "solely deterrent/retributive" test in *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, ——, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994). Supreme Court precedent thus does not provide clear guidance on which test is correct. The treatment of *Halper* by lower federal courts fails to resolve this issue as well.[2] Due to the lack of guidance from federal courts, state courts considering double jeopardy questions in the license revocation context have had to choose among various *dicta* in *Halper* in search of a standard.

*Halper* is admittedly a case from which more than one "test" can be rationalized. But in determining what *Halper* stands for, we are bound by the Supreme Court's holding, not what the Court said in *dicta.* We thus reject the "solely remedial" test on the grounds that it is not the specific holding of *Halper.* The "solely remedial" test is also troubling because virtually any civil sanction, such as attorney disbarment or prison disciplinary proceedings, combines both remedial and retributive purposes. The "solely remedial" test could thus bar subsequent criminal prosecutions in a wide variety of contexts. We believe, as Justice Blackmun prudently observed, that *Halper* was designed for the "rare case." 490 U.S. at 449, 109 S.Ct. at 1902. For the reasons listed above, we adopt the "solely deterrent/retributive" test. In our view, this test permits the imposition of a civil sanction that can "fairly be character-

---

2. Appellants cite two federal appellate decisions which adopted the "solely remedial" test. *See United States v. Hudson,* 14 F.3d 536 (10th Cir. 1994); *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994). But several federal appellate court decisions have expressly rejected this interpretation. *See Bae v. Shalala,* 44 F.3d 489, 493 (7th Cir.1995) (refusing to read

*Halper* so broadly as to invalidate any remedial sanction simply because it is also consistent with punitive goals); *S.E.C. v. Bilzerian,* 29 F.3d 689, 696 n. 11 (D.C.Cir.1994) (rejecting the "solely remedial" test and noting that defendant ignored clear language of *Halper* holding). Because of the circuit split, federal appellate decisions have failed to define what *Halper* stands for.

ized as remedial," but also may deter or punish the offender.

Adding further complexity to this issue, the state argues that regardless of the test chosen from *Halper*, that case was not meant to govern double jeopardy questions in cases concerning nonmonetary sanctions such as license revocations.[3] To be sure, *Halper* considered a double jeopardy claim arising from monetary sanctions designed to make the government whole for the cost of investigating and prosecuting an infractor. However, *Halper* has been applied repeatedly in state and federal cases involving nonmonetary sanctions such as professional licensing, prison disciplinary proceedings, and driver's license revocations.[4] We thus conclude that the "solely deterrent/retributive" test of *Halper* applies to both monetary and nonmonetary sanctions.

■ We now turn to the issue on appeal. Appellants argue that because the implied consent statute serves retributive and deterrent purposes, it cannot fairly be characterized as remedial and, as such, is the "rare case" envisioned by the Supreme Court in *Halper*. The state counters that the statute is remedial and rationally related to the legitimate governmental purpose of removing drunk drivers from Minnesota's streets and highways.

Appellants contend that the implied consent statute can no longer fairly be characterized as remedial due to various statutory provisions which demonstrate the punitive nature of the statute. As an illustration, appellants argue that civil license revocation is "used" as an additional enforcement arm of the DUI statute.[5]

Appellants' argument that civil license revocation is "used" as an additional enforcement arm of the DUI statute, and is thus unconstitutional, is without merit. Many statutes work in tandem with a civil and criminal arm. Most relevantly, the civil and criminal false-claims statutes considered in *Halper* complement each other, without necessarily violating double jeopardy concerns. For example, in *Halper* the district court granted summary judgment on the issue of civil false-claims based on the facts established by Halper's criminal conviction, which were later incorporated in the civil suit. 490 U.S. at 438, 109 S.Ct. at 1896. The facts established by Halper's criminal conviction, like appellants' license revocations, were thus "used" by the government to penalize him in a parallel proceeding, without necessarily violating double jeopardy concerns.

Appellants next argue that license revocation cannot fairly be characterized as remedial because revocation under the implied consent statute is found under the heading "Administrative Penalties." This argument is similarly unpersuasive. As discussed above, the Supreme Court decided in *Halper* that "the labels 'criminal' and 'civil' [and, one might add, 'penalty'] are not of paramount importance" in determining whether a civil sanction is punishment for double jeopardy purposes. 490 U.S. at 447, 109 S.Ct. at 1901.

Appellants finally assert that license revocation cannot fairly be characterized as remedial because the period of license revocation varies according to factors such as whether the chemical test was taken or refused, the driver is a repeat offender, the driver pleads immediately or contests the

3. We are mindful of the state's concern that applying *Halper* to nonmonetary sanctions may "have serious consequences for the entire licensing and regulatory scheme of the state." However, recent federal appellate court decisions have declined to hold various nonmonetary sanctions unconstitutional on double jeopardy grounds, demonstrating that the *Halper* slope is not as slippery as the state suggests. *See Bae*, 44 F.3d at 489 (debarment); *Bilzerian*, 29 F.3d at 696 (disgorgement); *Hudson*, 14 F.3d at 543 (debarment); *United States v. Newby*, 11 F.3d 1143 (3d Cir.1993) (prison discipline). These cases demonstrate that notwithstanding the state's fear, *Halper*'s actual reach has been quite short, prop-

erly reserved, as Justice Blackmun cautioned, for the "rare case."

4. *See supra*, note 3.

5. For example, the fact that a license has been revoked under the implied consent statute can be used to enhance a DUI charge to a gross misdemeanor (Minn.Stat. § 169.121 subd. 3(c)(1)); to enhance a DUI violation to an "aggravated violation" (Minn.Stat. § 169.129); and to impose statutory minimum sentences (Minn.Stat. § 169.121 subd. 3a(b)).

criminal matter, and the type of vehicle involved.

However, each of the examples cited by appellants can be defended as effectuating the statute's overriding remedial purpose. Revoking a repeat offender's license is rationally related to the statute's remedial purpose, because a driver who has shown a repeated willingness to drive while impaired presents a grave danger to the citizens of this state. Longer revocation periods are thus a logical remedial effort to protect the public from known dangers. Likewise, the consideration of license revocations during criminal sentencing is rationally related to the remedial purpose of protecting the public from those who choose to endanger others by driving in an intoxicated state on our streets and highways.

We now consider appellants' final argument that various amendments to the implied consent statute and the DUI statute, particularly those enacted in 1989 and 1992, as well as quotes from the legislature during the passage of the 1992 amendments, demonstrate that license revocation cannot fairly be characterized as remedial.

Our task in determining whether these legislative amendments so altered the implied consent statute that it no longer can fairly be characterized as remedial is to assess "the character of the actual sanctions imposed on the individual by the machinery of the state." *Halper*, 490 U.S. at 447, 109 S.Ct. at 1901. It is true that the implied consent statute has been amended to give it more teeth, but these amendments help effectuate the statute's overriding remedial purpose; they do not violate "the 'humane interests' safeguarded by the Double Jeopardy Clause's proscription of multiple punishments." *See id.* Any punitive effect is merely incidental to the statute's overriding remedial purpose.

■ Appellants next turn to quotes from the sponsors of the 1992 amendments in the Minnesota House and Senate as further evidence that these amendments were designed to heighten the implied consent statute's punitive and deterrent aspects. To be sure, statements made by a sponsor of a bill on the purpose or effect of the legislation are gener-

ally entitled to some weight in construing a statute. *See Handle with Care, Inc. v. Department of Human Services*, 406 N.W.2d 518, 522 (Minn.1987). However, of much greater import is that we have repeatedly recognized the implied consent statute as remedial in nature. *See State v. Halvorson*, 288 Minn. 424, 425, 181 N.W.2d 473, 474 (1970). Appellants' argument that statements by sponsors of the 1992 amendments changed the underlying remedial purpose of the implied consent statute, in place for over 34 years, simply places far too much emphasis on these pronouncements.

We held long ago that revocation of a driver's license does not violate constitutional protections against double jeopardy because license revocation is an exercise of the state's police power for the protection of the public, not punishment. *Anderson*, 126 N.W.2d at 783–84 (citations omitted). Moreover,

> [t]his court has repeatedly recognized that laws prohibiting a person from driving a motor vehicle while intoxicated are remedial statutes. Consequently, such laws are liberally interpreted in favor of the public interest and against the private interest of the drivers involved.

*State v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981) (citing numerous Minnesota Supreme Court decisions using similar, if not identical, language). All of these cases rely on the principle enunciated in *Anderson* that revocation of a driver's license ensures the public interest of protecting sober citizens on the roads against the private interest of the drunk driver. Although the temporary revocation of a driver's license may be painful and appear to "punish" the offender, the primary purpose of the law is to protect the public by removing from Minnesota's streets and highways those who drive under the influence of alcohol.

We also consider crucial that the specific penalty before us is the revocation of a driver's license. A driver's license is a privilege which, like other privileges enjoyed by citizens of this state, is one laden with civic responsibilities. Pursuant to this end, the Minnesota legislature has enacted a comprehensive set of statutes and regulations gov-

erning the issuance of driver's licenses.[6] A citizen who operates a motor vehicle while under the influence of alcohol falls short in his civic duty by putting others at risk through his reckless behavior. Sober, careful drivers should not have to share the highway with drivers who neglect their civic duty by drinking and driving. For the aforementioned reasons, the court of appeals decision is affirmed.

---

**6.** *See generally* Minn.Stat. § 171 (1994). For example, in order to receive a license, an applicant must pass written and road tests and mental and physical examinations as necessary to determine the applicant's fitness to operate a motor vehicle safely upon the highways. Minn.Stat. § 171.13, subd. 1 (1994). Indeed, the written test includes a test of the applicant's knowledge of the effects of alcohol and drugs on a driver's ability to operate a motor vehicle safely and legally. *Id.*