700 So.2d 1201 (1997)
Ex parte K.H.
(In re STATE of Alabama v. K.H.).
CR-96-1872.
Court of Criminal Appeals of Alabama.
August 6, 1997.
*1202 James D. Moffatt, Athens, for petitioner.
No brief filed for respondent.
LONG, Presiding Judge.
The petitioner, K.H.,[1] a high school student, filed this petition for a writ of mandamus, asking us to order the Honorable James W. Woodroof, circuit judge for the thirty-ninth judicial circuit, to dismiss the indictment against him. After K.H. was indicted for three counts of distributing a controlled substance and one count of possessing a controlled substance, the Limestone County Board of Education (the "Board") suspended him from regular classes, pursuant to § 16-1-24.1, Code of Alabama 1975, pending disposition of the criminal charges. The Board sent a notice of suspension to K.H.'s parents. The notice stated the following reason for the suspension: "Charges of criminal conduct that are pending which interferes with or obstructs the mission or operations of the Limestone County School System or the safety or welfare of students or employees." K.H. moved to dismiss the indictment, alleging as grounds that his suspension and criminal prosecution for the same conduct violated his right to be free from double jeopardy. Judge Woodroof denied the motion; this petition followed.
Initially, we must determine if a petition for a writ of mandamus is the appropriate vehicle by which to review a pretrial ruling on a motion to dismiss an indictment, which states as a ground a violation of the Double Jeopardy Clause. The Alabama Supreme Court addressed this issue in Ex parte Ziglar, 669 So.2d 133 (Ala.1995), where the Court, departing from the long-established practice of not reviewing double jeopardy issues by way of mandamus,[2] stated:
"We are satisfied that a criminal defendant with a double jeopardy defense should not be foreclosed from pretrial correction of a trial judge's erroneous denial of a plea of former jeopardy. Therefore, the appellate courts of this State will review double jeopardy claims properly presented by petitions for the writ of mandamus. Rule 21(e), Ala.R.App.P. This procedure will adequately protect the interest of a defendant, as emphasized in Abney [v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)], so as to avoid the personal strain, public embarrassment, and expense of a subsequent criminal trial."
669 So.2d at 135.
The Fifth Amendment to the United States Constitution provides:
"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces or in the militia, when in actual service in time of war or public danger; nor shall any person be subject *1203 for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall property be taken for public use, without just compensation."
(Emphasis added.) See Alabama Constitution of 1901, Art. I, § 9.
K.H. contends that his suspension violates the Double Jeopardy Clause because, he says, the suspension was punitive in nature. K.H. cites United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and Crump v. Alabama Alcoholic Beverage Control Board, 678 So.2d 133 (Ala.Civ.App. 1995), cert. denied, 678 So.2d 140 (Ala.1996), in support of his contention. In Halper, the United States Supreme Court held that a civil penalty imposed in conjunction with a criminal prosecution amounts to a double jeopardy violation when the fine is so extreme that it amounts to punishment. In Crump, the appellant was charged with selling alcoholic beverages to a minor. She was acquitted of this criminal charge and was later named in a civil proceeding seeking to revoke her liquor license. Crump lost the civil suit and was fined $1,000. She argued on appeal that she had been twice put in jeopardy because, she said, the fine was punitive in nature. The Court of Civil Appeals, citing Halper, concluded that the purpose of the fine was to punish and held that the appellant had been twice put in jeopardy for the same offense.
Whether a suspension from school imposed pursuant to § 16-1-24.1, and a subsequent criminal prosecution for the offense that formed the basis of the suspension violates the Double Jeopardy Clause is an issue of first impression in Alabama. Other states such as Georgia, Kansas, Minnesota, and North Carolina have addressed this issue and found that these circumstances do not violate double jeopardy principles. See Clark v. State, 220 Ga.App. 251, 469 S.E.2d 250 (1996); In the Matter of C.M.J., 259 Kan. 854, 915 P.2d 62 (1996); In the Matter of the Welfare of E.R.D., 551 N.W.2d 238 (Minn. App.1996); State v. Davis, 485 S.E.2d 329 (N.C.App.1997).
Judge Norton, writing for the Minnesota Court of Appeals in E.R.D., addressed the issue now before this court. Judge Norton in depth, in a well-reasoned opinion, wrote:
"To support his claim that the school suspension is `punishment,' E.R.D. relies on United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In Halper, the Supreme Court held that in `rare' instances a civil sanction may qualify as punishment for double jeopardy purposes if the sanction `may not fairly be characterized as remedial, but only as a deterrent or retribution.' Id. at 448-49, 109 S.Ct. at 1901-02. The Minnesota Supreme Court recently issued decisions applying the Halper analysis in the context of civil driver license revocation and administrative prison discipline proceedings, holding that neither proceeding constituted punishment for purposes of double jeopardy. State v. Hanson, 543 N.W.2d 84, 88-90 (Minn.1996) (civil license revocation followed by prosecution for driving under the influence does not violate Double Jeopardy Clause); [State v.] McKenzie, 542 N.W.2d [616] at 620-21 [(Minn.1996)] (disciplining prison inmate with placement in segregation and loss of good time credit served remedial purpose and did not bar subsequent criminal prosecution for same misconduct). The supreme court explained the Halper test:
"`Any sanction that only serves the goals of deterrence and retribution, and cannot be described as remedial, is "punishment" under Halper. In our view, this test permits the imposition of a civil sanction that can be "fairly characterized" as remedial, but also may deter or punish the offender.'
"McKenzie, 542 N.W.2d at 619.
"E.R.D. argues that the suspension here is not sufficiently related to any remedial purpose, but instead was intended only to serve purposes of punishment and deterrence. He contends, without citing legal authority, that the school's sanction must be `narrowly tailored' to serve a remedial purpose. To the contrary, a disciplinary sanction is remedial and does not involve *1204 double jeopardy if it is `rationally related to the remedial goal.' McKenzie, 542 N.W.2d at 620 (quoting United States v. Newby, 11 F.3d 1143, 1145 (3rd Cir.1993), cert. denied, 513 U.S. 834, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994)).
"E.R.D. argues ... that school discipline is certainly punishment for purposes of double jeopardy, because it affects a student's right to obtain an education, as mandated by law. See Minn.Stat. § 120.101, subd. 5 (1994) (requiring compulsory school instruction for children ages 7 through 16). By way of contrast, E.R.D. notes that, in determining that the civil sanction of driver license revocation was not `punishment' for purposes of double jeopardy, the supreme court considered it `crucial' that `[a] driver's license is a privilege... laden with civic responsibilities.' Hanson, 543 N.W.2d at 89. To the extent this distinction has any legal impact, we believe it makes no legal difference in the context of school disciplinary proceedings at issue here. As the state has aptly noted, all students are required to be in school, not just E.R.D. The crucial issue is whether the sanction against a disruptive student serves the remedial educational goals involving all the students, not just E.R.D. Although E.R.D. may have experienced his suspension purely as punishment, we do not review this issue from E.R.D.'s perspective. Whether a particular sanction constitutes punishment for double jeopardy purposes is determined not from `the defendant's perspective,' but rather with reference to `the purposes actually served by the sanction....' Halper, 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7.
"The supreme court's recent decision regarding double jeopardy in relation to prison disciplinary proceedings guides our review here of school disciplinary proceedings and double jeopardy. In McKenzie, the supreme court held that inmate segregation and loss of good time credit for violent conduct served remedial goals of institutional order and safety, `remedial goals, intended to prevent further disruption of prison security....' McKenzie, 542 N.W.2d at 620. The supreme court then recognized that, in a `rare case,' a disproportionately severe sanction for a minor violation of prison rules could trigger double jeopardy. Id. at 621. The court concluded that 300 days in segregation and a proportionate loss of good time credit did not constitute such a rare case, because the sanction was `not overwhelmingly punitive considering the seriousness of McKenzie's misconduct.' Id.

"We now turn to the purpose that school suspension serves. The Pupil Fair Dismissal Act (the Act) governs a school's dismissal of a student. See Minn.Stat. § 127.29, subd. 1 (1994)."... The Act allows a school to dismiss a pupil on three grounds: (1) `Willful violation of any reasonable school board regulation,' (2) `[w]illful conduct which materially and substantially disrupts the rights of others to an education,' and (3) `[w]illful conduct which endangers the pupil or other pupils, or the property of the school.' Minn.Stat. § 127.29, subd. 2. Each of these grounds serves a remedial goal. Accordingly, we conclude that a student's suspension that falls within these statutory grounds serves remedial goals of safety, institutional order, and protection of the rights of other students to an education. Cf. McKenzie, 542 N.W.2d at 620 (prison discipline, designed to establish institutional order and to protect safety of staff and inmates, serves remedial goals).
"....
"Other states have applied the Halper test in the context of school disciplinary proceedings and have unanimously held that no double jeopardy violation occurred. C.M.J., 915 P.2d at 69 (expulsion of student who had loaded gun in his car located on school property served remedial purpose of ensuring safety and effective administration of school order and discipline); Clark v. State, 220 Ga.App. 251, 469 S.E.2d 250, 252 (1996) (10-day suspension of student for armed robbery of convenience store served remedial purpose of providing for safety and welfare of students by preventing student who confessed to violent crime from returning to school if released from jail); In re Gila County Juvenile Delinquency Action Nos. DEL 6280, DEL *1205 6281, & DEL 6282, 169 Ariz. 53, 816 P.2d 950, 951 (App.1991) (`While the school board's action in expelling a student from school clearly has a punitive effect on the individual student, we believe its primary purpose and function is to protect the other students and the faculty and to preserve the integrity and continuity of the educational process'); see also In re Dandridge, 614 So.2d 129, 131 (La.App.1993) (`administrative proceeding resulting in expulsion does not constitute a criminal prosecution and trigger double jeopardy protection'), writ denied, 616 So.2d 684 (La. 1993). We find no authority holding that a school discipline bars subsequent juvenile prosecution for the same conduct.
"We recognize that the sanction of suspension imposed on E.R.D. undoubtedly carries the `sting of punishment.' It also has a deterrent effect. But because the suspension also serves remedial goals enumerated in the Pupil Fair Dismissal Act, as implemented by the school district in which E.R.D. lives, the suspension may `fairly be characterized as remedial' and passes the test set forth in Halper and applied to disciplinary sanctions in McKenzie, 542 N.W.2d at 619 (quoting Halper, 490 U.S. at 448-49, 109 S.Ct. at 1901-02)."
551 N.W.2d at 241-43. (Footnotes omitted.)
We adopt the reasoning of the Minnesota Court of Appeals in E.R.D.; thus, our inquiry centers on the purpose behind Alabama's school suspension statute. Section 16-1-24.1(b) provides:
"The principal shall notify appropriate law enforcement officials when any person violates local board of education policies concerning drugs, alcohol, weapons, physical harm to a person, or threatened physical harm to a person. If any criminal charge is warranted arising from the conduct, the principal is authorized to sign the appropriate warrant. If that person is a student enrolled in any public school in the State of Alabama, the local school system shall immediately suspend that person from attending regular classes and schedule a hearing at the earliest possible date, which shall not be later than five school days. The decision to suspend or initiate criminal charges against a student, or both, shall include a review and consideration of the student's exceptional status, if applicable, under Chapter 39, or appropriate federal statutory or case law."
The grounds for suspension listed above serve "remedial goals of safety, institutional order, and protection of the rights of other students to an education." E.R.D., 551 N.W.2d at 242. The stated purpose behind the statute is contained in § 16-1-24.1(a), which states, in pertinent part:
"The Legislature finds a compelling public interest in ensuring that schools are made safe and drug-free for all students and school employees. The Legislature finds the need for a comprehensive safe school and drug-free school policy to be adopted by the State Board of Education. This policy should establish minimum standards for classes of offenses and prescribe uniform minimum procedures and penalties for those who violate the policies. It is the intent of the Legislature that our schools remain safe and drug-free for all students and school employees."
Alabama has consistently held that the protection afforded by the Double Jeopardy Clause is not applicable to administrative proceedings. In Jenkins v. State, 367 So.2d 587 (Ala.Cr.App.1978), writ denied, 367 So.2d 590 (Ala.1979), this Court held that the Double Jeopardy Clause is not violated when a prisoner is subjected to a disciplinary action and also criminally prosecuted based on the same conduct. In Coleman v. State, 642 So.2d 532, 534 (Ala.Cr.App.1994), this court, quoting Project: Twenty-Second Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1991-1992, 81 Geo. L.J. 1029, 1221 (1993), stated: "`The Double Jeopardy Clause does not apply to actions that are not "essentially criminal".... Nor does it apply to disciplinary, parole, probation, or bond revocation hearings, because they are administrative proceedings.'"
We hold, as did the Minnesota Court of Appeals in E.R.D., that a suspension from school imposed pursuant to § 16-1-24.1 and a criminal prosecution for the same conduct does not violate the Double Jeopardy Clause.
*1206 For the foregoing reasons, the petition is due to be denied.
PETITION DENIED.[*]
All the Judges concur.
NOTES
[1] The anonymity of the petitioner is being protected pursuant to Rule 52, Ala.R.App.P.
[2] See Ex parte Spears, 621 So.2d 1255 (Ala. 1993).
[*] Note from the reporter of decisions: On September 10, 1997, the Supreme Court, without opinion, denied a related mandamus petition (1961909).