[J-83-2016] [MO:Todd, J.]
IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

| | | |
|---|---|---|
| LAWRENCE S. SHOUL, | : | No. 64 MAP 2015 |
| | : | |
| Appellee | : | Appeal from the Order of the Adams |
| | : | County Court of Common Pleas, Civil |
| | : | Division, at No. 2014-S-721 dated |
| v. | : | February 24, 2015, exited February 26, |
| | : | 2015. |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | ARGUED: December 6, 2016 |
| DEPARTMENT OF TRANSPORTATION, | : | |
| BUREAU OF DRIVER LICENSING, | : | |
| | : | |
| Appellant | : | |

## CONCURRING AND DISSENTING OPINION

**JUSTICE MUNDY**                                **DECIDED: November 22, 2017**

I agree with the Majority to the extent it concludes that 75 Pa.C.S. § 1611(e) does not violate Appellee's substantive due process rights under the Pennsylvania Constitution. As the Majority explains, Section 1611(e) has a "real and substantial relation" to the deterrence of drug trafficking. *See* Majority Op. at 17-18. I therefore join parts I and II(A) of the Majority Opinion. However, I cannot agree that Section 1611(e)'s revocation of driving privileges imposes punishment within the meaning of the Eighth Amendment. Therefore, I respectfully dissent from the Majority's decision to vacate and remand in part.

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. I begin by noting that this Court has already concluded that suspension or revocation of one's driver's license is not a criminal sanction. Indeed, in *Plowman v.*

*Commonwealth Department of Transportation*, 635 A.2d 124 (Pa. 1993), this Court concluded that mandatory suspension of a driver's license because of a drug conviction is not criminal punishment for the purposes of the Eighth Amendment. *Plowman*, 635 A.2d at 127-28. The Majority does not attempt to reconcile its decision with *Plowman*.[1]

Putting aside this Court's analysis in *Plowman*, the Majority's conclusion is still problematic. Some traditional examples of punishment include imprisonment, a criminal fine, criminal forfeiture, and civil *in rem* forfeiture, which all impose significant restrictions on the class of persons against whom they are imposed. Imprisonment, parole, and probation fundamentally restrict a person's liberty and movement. Further, everyone generally has a right to own property and not to have the government restrict his or her personal liberty. In *Austin v. United States*, 509 U.S. 602 (1993), upon which the Majority heavily relies, the Court characterized the concept of a fine as the government "extracting payments" from its citizens, and therefore deemed it punishment. *Austin*, 509 U.S. at 610. However, it is quite another matter for a state to grant a *privilege* to a person and revoke the same. *See Plowman*, 635 A.2d at 126 (stating, "[o]perating a motor vehicle upon a Commonwealth highway is not a property right but a privilege.") (internal quotation marks and citation omitted). Therefore, the relevant inquiry is whether the revocation of a privilege otherwise granted by the government is itself punishment within the meaning of the Eighth Amendment, even if the revocation has some deterrent purpose.

The Majority concludes that *Austin* provides the appropriate framework for determining whether Section 1611(e) constitutes punishment within the meaning of the

---

[1] This Court also expressed the view that, even if it deemed a license suspension predicated on a criminal conviction to be punishment, it would not find it unconstitutional because it was "not arbitrarily imposed for the purpose of inflicting pain and suffering." *Plowman*, 635 A.2d at 127 n.3.

Eighth Amendment.[2] In *Austin*, the Supreme Court considered whether the federal civil *in rem* forfeiture scheme constituted a punishment for the purposes of the Excessive Fines Clause. The Court concluded it did, noting that "[t]he Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as *punishment* for some offense." *Austin*, 509 U.S. at 610 (internal quotation marks and citation omitted; emphasis in original). After discussing the history of forfeiture, the Court concluded that certain hallmarks of the federal forfeiture scheme revealed that Congress intended to utilize civil *in rem* forfeiture to punish. *Id.* at 619. The Supreme Court noted that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.* (quoting *United States v. Halper*, 490 U.S. 435, 448 (1989)).

This broadly-worded pronouncement in *Austin* comes from *Halper*. Halper was convicted of 65 counts of Medicare fraud. *Halper*, 490 U.S. at 437. After the criminal proceedings concluded, the government brought a separate civil action seeking a $130,000.00 civil penalty against Halper under the False Claims Act, which mandated a $2,000.00 penalty per violation. *Id.* at 448. Ultimately, the Court concluded that the imposition of this civil penalty could be a second and subsequent "punishment," in violation of the Double Jeopardy Clause. *Id.* at 449. The Court stated the rule as "[w]here a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the

---

[2] *Plowman* was decided on December 14, 1993, approximately five and one-half months after *Austin* was decided on June 28, 1993.

Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment." *Id.*

The Court's analysis in *Halper* as to whether the civil penalty was "punishment" appeared to take contradictory positions insofar as the Court articulated two tests. The first was the test that appears in *Austin*, "a civil sanction that *cannot fairly be said solely to serve a remedial purpose*, but rather can only be explained as also serving either retributive or deterrent purposes, *is punishment*, as we have come to understand the term." *Id.* at 448 (emphases added). However, the second test from *Halper* states that, "a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only as a deterrent or retribution.*" *Id.* at 448-49 (emphasis added). The Supreme Court of Minnesota highlighted the contradiction in the following terms.

> The two "tests" quoted above are strikingly dissimilar. The first is a "solely remedial" test. Applied literally, it would appear to invalidate on double jeopardy grounds any remedial civil sanction also "serving either retributive or deterrent purposes," no matter how minor. The second is a "solely deterrent/retributive" test. Applied literally, it would appear to uphold on double jeopardy grounds any civil sanction which "may fairly be characterized as remedial."

*State v. Hanson*, 543 N.W.2d 84, 87 (Minn. 1996).

The Supreme Court abrogated *Halper* in *Hudson v. United States*, 522 U.S. 93 (1997). The Court confronted its problematic language in *Halper*, noting that the "solely remedial" test, which is found in *Austin*, had proved to be unworkable because "all civil penalties have some deterrent effect." *Hudson*, 522 U.S. at 102. Echoing the Minnesota Supreme Court's concerns, the Court observed "[i]f a sanction must be 'solely' remedial (*i.e.,* entirely nondeterrent) to avoid implicating the Double Jeopardy

Clause, then no civil penalties are beyond the scope of the Clause." *Id.* Therefore, it appears that the Court has retreated from its "solely remedial" test in determining whether a sanction constitutes punishment. Critically, *Hudson* did not discuss or retreat from *Halper*'s "solely deterrent" test.[3]

In addition, by taking *Halper*'s "solely remedial" test literally, as the Majority does, it is difficult to envision a civil consequence that does not serve as deterrence in some regard, and hence is not punishment. As *Hudson* recognized, *every* civil consequence imposed by the government is intended to have at least some deterrent purpose. *Id.*

---

[3] The Majority concludes that *Hudson* is of no consequence in this case because *Halper* and *Hudson* are Double Jeopardy Clause cases, whereas *Austin* is an Eighth Amendment case. Majority Op. at 22 n.14. However, the Majority appears to acknowledge that the test applied in *Austin* derived from *Halper*'s Double Jeopardy Clause test that the Court has since backed away from in *Hudson.* I recognize that it is not clear whether the Court has abrogated *Halper*'s test for all constitutional provisions given that civil in rem forfeiture is materially different from revocation of a privilege. Nevertheless, I conclude the test is not applicable.

The Majority cites *United States v. Ursery*, 518 U.S. 267 (1998), in which the Court held that civil *in rem* forfeiture was not punishment for purposes of the Double Jeopardy Clause. However, in its analysis, the *Ursery* Court explicitly noted that "[t]he holding of *Austin* was limited to *the Excessive Fines Clause* of the Eighth Amendment[.]" *Ursery*, 518 U.S. at 287 (emphasis added). As noted above, *Austin* characterized a fine as an "extraction" or "payment" to the sovereign as punishment for an offense. *Austin*, 509 U.S at 609-10, 622. In forfeiture proceedings, such as in *Austin*, the government obviously intends to "extract" property of some sort from a citizen. Therefore, *Austin* applied *Halper*'s "solely remedial" test to determine whether that payment to the government was punitive and hence a "fine" for the purposes of the Excessive Fines Clause. *Austin*'s use of the "solely remedial" test is therefore understandable, since "a fine that serves purely remedial purposes cannot be considered 'excessive' in any event." *Id.* at 622 n.14.

However, the revocation of a privilege is not a "payment" of property to the government. In this case, the Majority expands the scope of the "solely remedial" test beyond the Excessive Fines Clause. Under the Majority's view, *Halper*'s "solely remedial" test would apply to any negative consequence imposed by law, including revocation of a privilege. Therefore, even though the Supreme Court has not yet reconciled *Halper*, *Austin*, and *Hudson*, I cannot agree with the Majority's expansion of *Austin* beyond its legal foundation.

Indeed, the objective of government-imposed penalties is to advance the betterment of society as a whole and shape citizens' behavior in a way that promotes good citizenship and deters crime. Consequently, applying *Austin*'s solely remedial test as the Majority does, anything may be deemed punishment if it deters some behavior.

In my view, the test we should apply is *Halper*'s actual holding, i.e., the "solely deterrent" test that remains viable after *Hudson*.[4] Section 1611(e)'s consequence, while having deterrent effects, is not *solely* deterrent. Section 1611(e) protects the public from those who violate the conditions of having a commercial driver's license and promotes the general welfare by removing a participant in the drug trade from the Commonwealth's roads and highways. In my view, this is sufficient to show that Section 1611(e)'s consequence is not "solely deterrent" so as to constitute punishment, especially in light of the fact that it is the revocation of a privilege, not a fundamental or constitutional right.[5]

Based on the foregoing, I conclude the trial court erred when it held that Appellee's substantive due process rights and right to be free from cruel and unusual punishment were violated. Accordingly, I would reverse the trial court's order in its entirety. I respectfully dissent.

---

[4] This is consistent with *Halper*'s statement that its holding was intended to be "a rule for the rare case[.]" *Halper*, 490 U.S. at 449.

[5] My conclusion is consistent with the conclusion reached by many other states on this issue. *See, e.g.*, *State v. Hickam,* 668 A.2d 1321, 1328 (Conn. 1995), *overruled on other grounds*, *State v. Crawford*, 778 A.2d 947 (Conn. 2001); *State v. Savard*, 659 A.2d 1265, 1267-68 (Me. 1995); *Hanson*, 543 N.W.2d at 88-89; *State v. Mayo*, 915 S.W.2d 758, 761-63 (Mo. 1996).